*In re* V.B., a Minor (The People of the State of Illinois, Petitioner-Appellee, v. V.B., Respondent-Appellant).

Third District   No. 3—87—0806

Opinion filed January 24, 1989.

Frank W. Ralph, of State Appellate Defender's Office, of Ottawa, for appellant.

John A. Barra, State's Attorney, of Peoria (Rita Kennedy Mertel, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE STOUDER delivered the opinion of the court:

The respondent-appellant, V.B., a minor, appeals from the judgment of the circuit court of Peoria County, revoking her probation and committing her to the Department of Corrections. On March 24, 1987, the State filed a delinquency petition against V.B., alleging that she

committed the offense of kidnapping in that she knowingly and secretly confined Kortnee O'Neal, a child under the age of 13, against her will.

Accompanied by her mother and represented by her attorney, V.B. appeared in court on May 4, 1987, and entered her plea of guilty but mentally ill to the delinquency petition. At the beginning of the proceedings, the trial court indicated that it had reviewed the report of John E. Sheen, M.D., medical director of the Human Service Center, which concludes that V.B. does not fully appreciate the rightness or wrongness of her conduct regarding the kidnapping of the baby. The court stated that it also reviewed the medical report indicating that when she was five years old, V.B. suffered serious injuries as a result of an automobile accident.

After both V.B.'s mother and attorney indicated that it was still V.B.'s desire to enter a plea of guilty, the court asked V.B. and her mother a series of questions concerning their understanding that by pleading guilty V.B. waived her right to a trial, that the court could commit V.B. to an institution until she was 21 years old, and that it was recommended to the court that V.B. be given two years' probation with mental health treatment. Both V.B. and her mother indicated their understanding.

The State then presented its factual basis that V.B., while visiting St. Francis Hospital in Peoria on March 23, 1987, took Kortnee O'Neal, an infant, placed her in a baby blanket, and attempted to leave the hospital when she was stopped by a nurse. V.B.'s attorney indicated that she had reviewed the police reports and was satisfied that there was a factual basis for the offense charged.

The court accepted V.B.'s admission to the petition after it made findings that V.B. was guilty but mentally ill, that she had waived her rights to a hearing and to confront witnesses, that her plea was voluntary, that there was a factual basis for the offense charged and that the mother concurred in the plea. The trial court then entered the agreed-upon disposition, adding the additional condition that V.B. not visit any hospitals in Peoria, unless accompanied by her mother, her aunt or her probation officer. The court also advised V.B. and her mother of their right to appeal from the decision.

Subsequently, the State filed a petition to revoke V.B.'s probation. The petition alleged that V.B. committed the offense of residential burglary on May 21, 1987. On June 1, 1987, V.B. appeared in court with her attorney and admitted to the allegations in the petition. Before accepting V.B.'s admission, the court advised V.B. of her right to trial, to testify and call witnesses, her privilege against self-incrimina-

tion, and her possible commitment to the Department of Corrections. The court also determined that there was a factual basis for the plea, in that V.B. admitted having entered the home of a friend, Kimberly Nordvall, through a window and stealing $5. After accepting her admission, the court ordered preparation of a placement investigation and an evaluation by Dietra Teichmann, Ph. D.

The social history report prepared by probation officer Valerie Baske indicates that 15-year-old V.B. had been a healthy child, enjoying normal development until she was involved in a severe auto accident at the age of five. V.B.'s father, uncle and cousin were killed in the accident, and V.B. suffered extensive injuries, leaving her physically and mentally impaired. She had undergone surgery on at least four occasions for skin grafting and to insert and remove pins in her hips. V.B.'s mother suffered a stroke when V.B. was one year old and has been unable to work since then. The report withheld a recommendation until V.B. could be evaluated by Dr. Teichmann. Attached to the report is the earlier psychiatric evaluation of V.B., performed by Dr. John E. Sheen, which concludes that V.B. suffers from post-traumatic organic brain syndrome and borderline-to-mild mental retardation and does not appreciate the rightness or wrongness of her acts.

The neuropsychological evaluation by Dr. Teichmann concludes that, although V.B. can learn to some degree the rightness and wrongness of acts, she does not understand how the principles of right and wrong apply to her or her actions. Dr. Teichmann states that V.B. could be easily misled by others into doing something wrong while not understanding that her actions are wrong. For this reason, Dr. Teichmann recommended 24-hour supervision and suggested that V.B. might respond positively to a behavior management type of program.

The supplemental and final probation reports of Valerie Baske detail Baske's efforts to find an appropriate placement for V.B. Baske notes that, after she determined that none of the facilities contacted could take V.B., the Department of Children and Family Services (DCFS) and the Peoria Association for Retarded Citizens (PARC) entered into an agreement to provide services for V.B. while she lived in the home of her paternal aunt.

At the subsequent dispositional hearing on September 17, 1987, the court accepted the recommendation of both counsel and ordered that the minor's probation term be extended to three years. As conditions of probation, V.B. was to cooperate and participate in the counseling and rehabilitation programs provided by PARC and she was not to get pregnant.

A second petition to revoke V.B.'s probation was filed on October 16, 1987. Testimony at the adjudicatory hearing indicates that V.B. stole a wallet belonging to Anna Maggio from Maggio's purse. Maggio, a secretary at the Blaine-Sumner School, which V.B. attended, determined that the wallet was missing after V.B. used a phone in the school office. V.B. was later seen writing with a pen belonging to Maggio, and Maggio's checkbook was found in the minor's purse. V.B. told the school principal at that time that the pen was a gift from her aunt. In a statement to police as well as in her testimony, V.B. explained that she picked up the checkbook and pen after seeing them discarded outside the door of the school. V.B. stated that she had intended to turn the items in at school, but she forgot. V.B. had shown the wallet and pen to her aunt, who advised her to turn them in when she went to school the following morning. After hearing the evidence, the trial court found that V.B. had violated the terms of her probation.

A social history update prepared by DCFS indicates that V.B. had other problems at school, including fighting, being in school after hours without permission, failing to report for detention, and pulling up her skirt and exposing herself to two boys in class. The report recommends that V.B. continue her present placement and that she receive individual therapy and family support services.

At the dispositional hearing on November 19, 1987, no formal evidence was presented. While the State recommended commitment to the Department of Corrections, defense counsel argued for continuing the term of probation, along with a possible period of detention and with restrictions on V.B.'s behavior. Defense counsel explained that it would be traumatic for V.B. since she would be "overrun by the other young women." Vic Reed of DCFS and Karen Mindock of PARC both recommended continuing the community placement. Reed explained that although V.B. had been expelled for the remainder of the semester as a result of the theft of the wallet, the minor was making progress out of school. Mindock stated that a behavior contract had been entered into with V.B. whereby her activities were very closely monitored.

At the close of the hearing, the court ordered that V.B. be committed to the Department of Corrections. The court stated that other children have to be protected from V.B. and that V.B. needed structure. The court expressed doubt that it was healthy for V.B. to have to remain indoors with her aunt all day during her expulsion from school. The court concluded that the Department of Corrections, with the variety of activities it offers, was a healthier environment for V.B.

V.B. then brought this appeal, arguing first that the trial court erred in accepting her admission to the original delinquency petition since the court failed to properly advise her of her rights, and second, that the trial court abused its discretion in committing her to the Department of Corrections. We affirm.

■ The supreme court of Illinois has stated that "where no direct appeal was taken from the original order of probation and the time for appeal has expired, a court will be later precluded from collaterally reviewing the propriety of that initial order in an appeal from the revocation of that probation" unless, of course, the basis for the attack is that the order is void. (*In re T.E.* (1981), 85 Ill. 2d 326, 333, 423 N.E.2d 910, 913.) In this case, V.B. did not appeal from the original order of probation and the time for appeal has expired. Additionally, V.B. does not attack the original order as being void. We find no reason, therefore, to review the propriety of the original order of probation.

V.B. cites *In re J.W.* (1987), 164 Ill. App. 3d 826, 518 N.E.2d 310, arguing that the First District court in that case, relying on *Baldasar v. Illinois* (1980), 446 U.S. 222, 64 L. Ed. 2d 169, 100 S. Ct. 1585, considered the propriety of a prior admission even though it was not directly before the court. That case, however, dealt with the issue of whether an improperly obtained admission could be used in proceedings to adjudicate a minor to be a habitual juvenile offender. The court noted that a "prerequisite for such a finding is a showing that a minor who had been adjudicated a delinquent has previously been twice adjudicated a delinquent minor for offenses which would have been felonies had the minor been prosecuted as an adult." *In re J.W.*, 164 Ill. App. 3d at 827-28, 518 N.E.2d at 311.

Although we do not necessarily approve of the result in *In re J.W.*, we recognize that the safeguards in proceedings to adjudicate a minor to be a habitual offender may be more pronounced than in proceedings to revoke an order of probation. In the former a trial court must have found the minor to have committed the equivalent of felonies on two prior occasions, the minor must have been adjudicated a delinquent a third time, and under these circumstances a trial court must adjudicate the minor to be a habitual offender and must commit the minor to the Department of Corrections. Contrarily, in proceedings to revoke an order of probation, the trial court is asked to exercise its discretion to revoke an order which it had in its discretion entered before. Additionally, the most likely reason for the minor's not appealing from a judgment of probation is that he or she considered probation to be merciful, considering what the court in the exercise of

its discretion could have done. Thus, we are not persuaded that the collateral review of a prior adjudication of delinquency in habitual offender proceedings in *In re J.W.* gives us reason to supersede supreme court of Illinois precedent regarding the review of an order of probation.

■ This court has stated that the disposition of a juvenile rests within the sound discretion of the trial court, and its order will not be overturned unless it is contrary to the manifest weight of the evidence. (*In re T.M.* (1984), 125 Ill. App. 3d 859, 861, 466 N.E.2d 1328, 1330.) In arguing that the trial court abused its discretion in committing her to the Department of Corrections, V.B. emphasizes the fact that her problems stem from a severe head injury suffered in an auto accident. She also argues that the spirit of the Juvenile Court Act (Ill. Rev. Stat. 1985, ch. 37, par. 701 *et seq.*) is to secure guidance preferably from her home (see Ill. Rev. Stat. 1985, ch. 37, par. 701—2(1)), and that commitment to the Department of Corrections should be used only as a last resort. See *People v. Hackman* (1971), 1 Ill. App. 3d 1030, 1032, 275 N.E.2d 488, 490.

■ We acknowledge V.B.'s concerns. However, we also recognize other policies, including the protection of the public (Ill. Rev. Stat. 1985, ch. 37, pars. 701—2(1), 705—10(1)(b)) and inadequate parental or guardian supervision (Ill. Rev. Stat. 1985, ch. 37, pars. 701—2(1), 705—10(1)(a)), which have particular application here. V.B. was on probation and under the supervision of her mother when she committed the offense of residential burglary. Thereafter, while she was serving her extended probation under the supervision of her aunt, V.B. committed the offense of theft. Additionally, the updated social history report prepared by the DCFS indicates that V.B. also had problems at school, including fighting, failure to report to detention, remaining in the school after hours without permission, fleeing the building while she was being escorted to the principal's office, and exposing herself to two boys.

Considering these facts, we cannot say that the trial court abused its discretion in committing V.B. to the Department of Corrections. The judgment is not against the manifest weight of the evidence. Accordingly, we affirm the decision of the circuit court of Peoria County.

Affirmed.

WOMBACHER and SCOTT, JJ., concur.